SAMUEL G. OWEN, APPELLEE, v. DELOS A. UDALL
ET AL., APPELLANTS.

FILED JANUARY 16, 1894.   No. 4350.

1. **Principal and Surety**: RELEASE OF SURETY. Where a surety signs an obligation upon the condition that another person named shall also sign said obligation as surety before the first

of such signers shall be held liable thereon, the condition named must be known to the obligee to render it effective as against him.

2. **Partnership:** LIABILITY AS SURETY. A partnership firm is not liable as a mere surety upon contracts foreign to the purposes for which the partnership was entered into by the partners. This rule, however, does not necessarily relieve from liability a partnership firm, which, for the purpose of subserving its own interests, has become surety for the performance by a principal contractor of his several undertakings, and which, solely by reason of its said relationship, has secured to itself advantages of a substantial character.

3. **Res Adjudicata.** A decree in favor of a firm of subcontractors, establishing its right to a mechanic's lien and the enforcement thereof as against real property improved by the contribution of such subcontractor firm, cannot properly be invoked as *res adjudicata*, or by way of estoppel in any other respect as against the owner of the property improved when he brings suit for the recovery of damages upon a contract signed, with others, by said subcontractor firm as surety, even though the gravamen of such suit is, in part, the repayment of the amount which, on account of said decrée, the aforesaid owner has been compelled to pay to such subcontractor firm.

APPEAL and error from the district court of Lancaster county. Heard below before FIELD, J.

The facts are stated in the opinion.

*Charles E. Magoon,* for appellants and plaintiffs in error:

A rule never to be lost sight of in determining the liability of a surety or guarantor is that he is a favorite of the law, and has a right to stand upon the strict terms of his obligation when such terms are ascertained. This is a rule universally recognized by the courts, and is applicable to every variety of circumstances. (Brandt, Suretyship & Guaranty, sec. 79 ; *Law v. East India Co.*, 4 Ves. [Eng.], 824; *Lang v. Pike*, 27 O. St., 498 ; *Kingsbury v. Westfall*, 61 N. Y., 356 ; *Ludlow v. Simond*, 2 Caines' Cases [N. Y.], 1 ; *Winston v. Fenwick*, 4 Stew. & P. [Ala.], 269 ;

*Harrison v. Field,* 2 Wash. [Va.], 136; *Pickersgill v. Lahens,* 15 Wall. [U. S.], 140 ; *Pecker v. Julius,* 2 Browne [Pa.], 31 ; *Van Derveer v. Wright,* 6 Barb. [N. Y.], 547 ; *Viele v. Hoag,* 24 Vt., 46 ; *Heath v. Derry Bank,* 44 N. H., 174 ; *Baker v. Briggs,* 8 Pick. [Mass.], 122 ; *Rogers v. Trustees of Schools,* 46 Ill., 428; *Judah v. Zimmerman,* 22 Ind., 389 ; *Grant v. Smith,* 46 N. Y., 93 ; *Ryan v. Trustees of Shawneetown,* 14 Ill., 20 ; *Miller v. Stewart,* 9 Wheat. [U. S.], 702.)

If the surety signs the obligation upon the condition that another shall also sign it as surety before it shall be binding on him, and this condition is agreed to by the creditor, or is known to him when he takes the obligation, the surety is not generally liable unless the condition is complied with. (Brandt, Suretyship & Guaranty, sec. 349; *Crawford v. Foster,* 6 Ga., 202; *United States v. Hammond,* 4 Biss. [U. S.], 283 ; *King v. Smith,* 2 Leigh [Va.], 157 ; *Miller v. Stem,* 12 Pa. St., 383 ; *Smith v. Doak,* 3 Tex., 216; *Jordan v. Loftin,* 13 Ala., 547; *Cowan v. Baird,* 77 N. Car., 201 ; *Clements v. Cassilly,* 4 La. Ann., 380; *Hill v. Sweetser,* 5 N. H., 168 ; *Read v. McLemore,* 34 Miss., 110 ; *Dunn v. Smith,* 12 Smed. & M. [Miss.], 602 ; *Goff v. Bankston,* 35 Miss., 518 ; *Bivins v. Helsley,* 4 Met. [Ky.], 78 ; *Evans v. Bremridge,* 8 De Gex [Eng.], 100 ; *Coffman v. Wilson,* 2 Met. [Ky.], 542; *Corporation of Huron v. Armstrong,* 27 Up. Can., Q. B., 533 ; *Pawling v. United States,* 4 Cranch [U. S.], 219 ; *Cutler v. Roberts,* 7 Neb., 4; *Gregory v. Littlejohn,* 25 Neb., 368.)

One partner cannot by his individual act bind the firm as the guarantor of the debt of another, or as a party to a note or bill made for the accommodation or as the surety for another, without authority specially given him for the purpose, or implied from the common course of business of the firm, or from the previous course of dealings between the parties, unless the act of such partner be afterwards ratified by the others. He who seeks to hold the firm has

the burden of proving authority, consent, or ratification. (Lindley, Partnership, p. 138*, note 21, *Sweetser v. French*, 2 Cush. [Mass.], 309; *Rollins v. Stevens*, 31 Me., 454; *Bank of Rochester v. Bowen*, 7 Wend. [N. Y.], 158; *Mayberry v. Bainton*, 2 Harr. [Del.], 24; *Maudlin v. Branch Bank at Mobile*, 2 Ala., 502; *Selden v. Bank of Commerce*, 3 Minn., 108; *Hamill v. Purvis*, 2 Pen. & W. [Pa.], 177; *Sutton v. Irwine*, 12 S. & R. [Pa.], 13; *McQuewans v. Hamlin*, 35 Pa. St., 517; *Schermerhorn v. Schermerhorn*, 1 Wend. [N. Y.], 119; *Davis v. Blackwell*, 5 Ill. App., 32; *Rolston v. Click*, 1 Stewart [Ala.], 526; *Foot v. Sabin*, 19 Johns. [N. Y.], 154; *Boyd v. Plumb*, 7 Wend. [N. Y.], 309; *Langan v. Hewett*, 13 Smed. & M. [Miss.], 122; *Andrews v. Planters Bank of Mississippi*, 7 Smed. & M. [Miss.], 192; *Moran v. Prather*, 23 Wall. [U. S.], 492; *Duncan v. Lowndes*, 3 Campb. [Eng.], 478; Lindley, Partnership, sec. 143.)

A point once adjudicated by a court of competent jurisdiction may be relied upon as an estoppel in any subsequent collateral suit, in the same or any other court at law or in chancery, or in admiralty when either party or the privies of either party allege anything inconsistent with it; and this, too, whether the subsequent suit is upon the same or a different cause of action. (Wells, Res Adjudicata, sec. 24; *Hackworth v. Zollars*, 30 Ia., 433; *Hites v. Irvine's Adm'r*, 13 O. St., 283; *Gray v. Dougherty*, 25 Cal., 266; *Covington & Cincinnati Bridge Co. v. Sargent*, 27 O. St., 237; *Kelly v. Donlin*, 70 Ill., 385.)

*Stearns & Strode, contra:*

One who signs a bond as surety and delivers it to another to obtain the signature of a third person before delivering it to the obligee, constitutes the person to whom he delivers it his agent, and is liable on the bond though it is delivered without the signature of the third person. (*Gibbs v. Johnson*, 30 N. W. Rep. [Mich.], 343.)

6

A partner exceeding his authority in making a contract is personally liable on it. (2 Lawson, Rights, Rem. & Pr., sec. 645; *Skinner v. Dayton*, 10 Am. Dec. [N. Y.], 286.)

A bond, which is perfect on its face, apparently duly executed by all whose names appear therein, which purports to be signed and delivered by the several obligors, and is actually delivered by the principal without stipulation, reservation, or condition, cannot be avoided by the sureties upon the ground that they signed it on the condition that it should be signed by other persons, who did not sign the same, if it appear that the obligee had no notice of such condition, and nothing to put him upon inquiry as to the manner of its execution, provided he has been induced upon the faith of such bond to act to his own prejudice. (*Cutler v. Roberts*, 7 Neb., 12.)

A partner entering into a contract in the name of the firm is estopped to deny his authority. (2 Lawson, Rights, Rem. & Pr., sec. 645; *Trustees of Presbyterian Congregation in Salem v. Williams*, 9 Wend. [N. Y.], 147; *Mann v. Ætna Ins. Co.*, 40 Wis., 552; *Porter v. Curry*, 50 Ill., 319; *Dudley v. Littlefield*, 21 Me., 418.)

The bondsmen are liable. (*Kiewit v. Carter*, 25 Neb., 460.)

Ryan, C.

1. The appellee Samuel G. Owen entered into a written contract with the appellant Delos A. Udall, whereby Udall agreed to erect a certain building for Owen in consideration of the payment to him of $6,200. In this contract Udall was principal, and the defendants McClay, McCall, and the Chicago Lumber Company were sureties. Collateral to this contract a bond was given for the proper performance of its undertakings, which bond was also signed by Udall as principal, and the same parties as sureties who signed the original contract in that capacity. No complaint is made as to the proper construction of the build-

ing.   Its cost, however, was greater than was contem-
plated, and the proprietor was therefore obliged to pay off
$1,501.43, the aggregate amount of certain mechanics'
liens against the property improved.   This suit was on the
contract and bond for the amount so paid out, and for
damages, which, the appellee claimed, aggregated the sum
of $2,347.33.   He also stated that, as the building was
not completed until sixty days after the time specified in
the contract, he had thereby suffered damages in the sum
of $600.   Udall, in his answer, pleaded a settlement and
full payment, which plea was also made by McClay and
McCall.   The two latter named parties also alleged that
at the time they signed the agreement and bond it was ex-
pressly agreed that H. P. Foster was to sign with them as
surety; that Foster did not sign said bond, but that the
same was signed by the Chicago Lumber Company, a co-
partnership firm, and that the name of the Chicago Lum-
ber Company was signed thereto without authority, and,
therefore, is not binding on the said firm; that the Chicago
Lumber Company filed a mechanic's lien on said premises
and foreclosed the same in the district court of Lancaster
county; in a suit wherein the said lumber company was
impleaded with the appellee Owen and other defendants,
and that judgment was obtained in said suit by the lumber
company against Owen, and that Owen paid said judgment,
whereby he is estopped from recovering from the defend-
ants the amount of said lien.   They also filed a denial of
all the allegations of the petition not expressly admitted.
The lumber company filed an answer containing the same
matters of defense as those pleaded by McCall and McClay,
and in addition alleged want of authority for the signing
of its name to the agreement and bond sued upon.   These
allegations were denied by a reply.   A reference of these
issues was stipulated by the parties, and thereupon ordered
by the court.   The referee found as facts that the building
contemplated by the agreement and bond was to have been

finished on or before November 15, 1885, and that in fact it was not finished for two months thereafter; and, although the agreement provided for the payment of a penalty at the rate of $10 per day for the time covered by such failure, the referee found that Owen was damaged only to the extent of $100, for which judgment was recommended. This finding was supported by the evidence, and was in no sense a penalty, and therefore not open to objection on that score.

2. The referee further found that both the contract and bond "were signed in the presence of one John J. Kouhn by defendants Sam McClay and F. McCall, who said they would each sign, provided defendant H. P. Foster also signed said instruments, and they entrusted said instruments to the said John J. Kouhn, who took them to the defendant H. P. Foster, who signed the name of the defendant, the Chicago Lumber Company, thereto, with the express provision in each instrument, 'provided they furnish the material,' as a condition of liability, which material the said company, so far as they could, did furnish; that said Chicago Lumber Company was and is a copartnership, composed of M. T. Green, of Chicago, and defendant H. P. Foster, managing partner, at Lincoln, Nebraska; that the signing of the name of the Chicago Lumber Company to said instruments was in express violation of the partnership agreement between the said Foster and his partner, Green, and was so expressed by said Foster to said Kouhn; that the plaintiff (Owen) never had any knowledge of the want of authority by said Foster to sign the name of the Chicago Lumber Company to said instruments, but, on the contrary, that plaintiff believed he had authority, and relied upon the signature and instruments as authorized and valid, and relied thereon and acted thereon as if the same were wholly valid and authorized, and in ignorance of the real facts; that neither of defendants McClay nor McCall brought to the knowledge of plaintiff at any time that their signing

was not in good faith and without condition until some time after the buildings were completed, and that the plaintiff relied on the signatures of defendants McClay and McCall, as made in said instruments, as made in good faith and without condition violated or restricted except as by the terms of said agreement." With reference to this finding of fact the referee stated his conclusion of law thus : " I find further that the defendant Chicago Lumber Company is estopped to deny the authority of defendant Foster to sign the obligations herein litigated, having received, in due course of business, benefits therefrom, and that the signing of said obligations was a wrongful act of said Foster as against the defendant Chicago Lumber Company, and that defendant Chicago Lumber Company is entitled to a surety judgment against the defendant H. P. Foster for all sums it shall be compelled to pay in this action."

It is without the possibility of question on the evidence that the Chicago Lumber Company furnished all the lumber that was used in the building, which was the subject-matter of the contract and bond. Within its line of business the Chicago Lumber Company could furnish no other material ; hence, the condition upon which the signature of the lumber company was affixed to the agreement and bond was fully met in the transactions wherein the lumber company was concerned. Its relation, therefore, to the bond was not that of a mere surety.

In the case of *Mann v. Ætna Ins. Co.*, 40 Wis., 549, the liability of the firm of Mann Brothers upon bonds was under consideration. Lyon, J., delivering the opinion of the court, used the following language: "The bonds do not seem to have been executed individually by but one of the firm of Mann Brothers, but only in the name of the firm. Whatever objection might have been made by the partners not executing the bonds in their individual capacity, to the form of execution, in case the action were against them on the bonds, there is no doubt of the right of the firm, in

whose name and for whose benefit they were executed, to treat them as valid and binding obligations against it. And the firm did so by paying the judgment recovered against Aldrich, Smith & Co. in the Milwaukee county court. Moreover, the firm having received the consideration for which the bonds were given, will not be heard to deny their validity. For these reasons, we think, the objection to the validity of the bonds because of the fact that each member of the firm did not execute them individually, is not available to the defendant."

In *Porter v. Curry*, 50 Ill., 319, it was held that "If the purchase of property by one copartner was not within the scope or usage of the partnership, yet if the property was in fact purchased on the firm credit, and the other partner afterwards claimed and obtained possession of it as firm property on that ground, the latter thereby ratified the act of his copartner, and cannot claim the benefits of the purchase and deny its obligations."

In the case at bar, one of the partners affixed the signature of the Chicago Lumber Company to the bond, as surety, it is true, and yet that relationship was predicated upon a condition profitable to the lumber company. This condition was that certain benefits should accrue to the lumber company by virtue of its relation to the contracts in question. The lumber company received the benefits stipulated for, as a condition for its becoming surety for the performance by Udall of his undertakings. Having received these benefits, it does not now occupy the relation of a mere surety to said contracts. It has become bound as fully as though no inhibition upon its powers was contained in the partnership articles adopted between Green and Foster, the individuals who constitute the firm known as the Chicago Lumber Company. The referee, therefore, was right in concluding that the lumber company was held as surety upon the contract and bond, notwithstanding the inhibition against its sustaining that relation contained in its partnership articles.

3. It is insisted on behalf of McClay and McCall that the building erected was a much more expensive building than was contemplated by the contract and bond, and that the plans and specifications, with reference to which said contract and bond were made, were radically departed from in the construction of the building, as to the erection of which they had become sureties. As to whether or not these objections were well founded, we are without sufficient data to form an opinion. The specifications do not seem to have been used in evidence, and as they were the only reliable data from which we could determine whether there has been a departure or not, we must assume, in the absence of a showing to the contrary, that there was no such departure as would release the sureties from their undertaking.

4. Again, it is urged by the sureties, McCall and Mc-Clay, that their signatures were attached to the contract as well as to the bond, upon the condition that the signature of H. P. Foster should afterwards be attached to the same instruments. The language in which this defense was attempted to be pleaded by the answer of these parties is as follows : "These defendants further say that they signed said contract as sureties only, and that they signed the same with the express understanding and agreement with the plaintiff that the said contract should be of no binding force until the same had been signed in addition to themselves by ——, and that the same was never signed by said parties." In this part of the answer, which is the only one upon the subject under discussion, there was the absence of a very material element, to-wit, the name of the party whose signature was to be obtained in addition to the signatures affixed by McCall and McClay respectively. It is very doubtful whether any finding could supply this deficiency. Should it be conceded, however, that under the proofs we should be justified in assuming that H. P. Foster's name was one to be inserted

in the blank, there would arise another difficulty in respect to the contention of these sureties, and that is, that neither the contract nor bond contained any intimation of such a condition as is now urged in respect to the signature of Foster. The evidence which would logically be necessary to sustain the averments in this respect, construed as liberally as may be, would relate to matters resting in parol previous to the signing by McClay and McCall. The contention urged is, that in addition to the signatures of these parties there should afterwards be obtained the signature of another party, or the signatures of the two parties named would not have any binding force. The condition that the contract and bond should be operative only upon their being signed by Foster, could be made available only by showing that it was assented to by the obligee; or, at least, that he approved of the signatures of McClay and McCall upon the condition named. The evidence upon this point is conflicting, and the finding of the referee is adverse to such condition being known to Owen at the time he received the contract and bond as fully executed, and that Owen never knew of any claim of such condition until the cause of action sued on had almost, if not entirely, accrued in his favor. There is, however, another consideration which militates very strongly against the claim made for the release of the sureties McCall and McClay, and that is, that as a matter of fact the signature of the Chicago Lumber Company affixed by H. P. Foster necessarily rendered him liable, as found by the referee, to the same extent as he would have been liable had he signed his own proper name instead of that of the Chicago Lumber Company. In view of all these considerations, the defendants McCall and McClay should not be heard to assert this defense.

5. As to the matter of settlement, the evidence was conflicting; on the one hand, it being insisted that the settlement referred to embraced simply extras which are not

sued for in this action; on the other hand, the contention was that the settlement was of all matters in dispute. In support of the first, the testimony of Owen was direct and circumstantial; and against it was the testimony of Udall with equal certainty. The referee, however, found the facts consistently with the evidence given by Owen, and, therefore, said finding will not be disturbed.

6. The sureties, McClay and McCall, insisted that they should be released from liability, because they notified Owen not to make payments to Udall, and because Owen made payments without insisting upon there being furnished him a statement from the clerk of the office wherein liens are recorded that such clerk had formally examined the records and found no liens or claims recorded against the work or on account of said contract; and that said Owen, although he had knowledge of the existence of other claims, voluntarily, and against the express protests of said sureties, made payments to Udall of large sums of money on account of his contract. An examination of the record furnishes no evidence in support of these affirmative allegations, and upon this subject the findings of the referee are silent. The payments seem to have been made, so far as the evidence shows, in accordance with the terms of the contract as to the performance of the conditions of which the said McClay and McCall were sureties.

7. It is insisted by the defendants sustaining the relation of sureties to the contract and bond sued upon that Owen is estopped to claim payment of the amounts by him paid to the Chicago Lumber Company upon its enforcement of the mechanic's lien for material furnished for the erection of the building, as to the construction of which the contract and bond were made. This claim is founded upon the fact that anterior to the commencement of this suit there was filed by J. R. Megahan, and another, petitions for the foreclosure of mechanics' liens against the said building, on account of labor done in the erection of the same.

To this suit the Chicago Lumber Company and Samuel G. Owen were made defendants. The Chicago Lumber Company, by answer in the nature of a cross-petition, set forth its claim for the enforcement of a mechanic's lien against the same premises. Samuel G. Owen answered this cross-petition of the Chicago Lumber Company in general denial. A decree was afterwards rendered establishing the liens of the several claimants therefor in that suit. It is insisted that, as between Owen and the Chicago Lumber Company, that decree settled for all purposes the claim of the Chicago Lumber Company adversely to Owen, and from thenceforward he was estopped to afterwards set up that claim as the foundation on his own behalf for a recovery upon the contract and bond sued on herein.

The said contract and bond, it will be observed, created between Owen and Udall the relation of owner of the property to be improved and principal contractor. Whoever else contributed any lumber, material, or labor for the erection of the building contracted for, did so as subcontractor. The action of each of these subcontractors for the enforcement of his lien was necessarily against Owen as owner of the property to be improved, against Udall as principal contractor, and against other parties claiming liens. By no stretch of legal proprieties could McClay, McCall, or the Chicago Lumber Company, as sureties upon the contract and bond sued on herein, be brought in as parties to the foreclosure of the liens of such subcontractors. In a suit by such subcontractors the only matter which could be litigated was the liability of the property for the payment of such amount as such subcontractors had furnished for its betterment. Between the owner and the subcontractors there is not necessarily any direct contract relation. The liability is only that of the property for the payment of such an amount as the contribution of such subcontractors should render it liable to. Under these circumstances it is difficult to conceive how any judgment

rendered in favor of a subcontractor could be an adjudication of the rights of Owen to sue McClay, McCall, and the Chicago Lumber Company, as sureties, for the non-performance by Udall, their principal, of conditions which they had agreed to be bound that he should perform. It is true that the decree was in favor of the Chicago Lumber Company and against Owen as one of the defendants; and yet that decree was only to the extent that certain property was held liable for the payment for certain materials used in its improvement. The contract and bond signed by the Chicago Lumber Company did not stipulate that the Chicago Lumber Company would file no lien for material furnished; indeed, the provision that the material should be furnished by that company would seem to imply rather the contrary. As no condition contained in the contract or bond signed by the Chicago Lumber Company afforded any ground for pleading a defense against the claim of the Chicago Lumber Company to a lien, it necessarily resulted that no estoppel could be predicated upon the failure of Owen to plead such matter; neither did the decree in favor of the Chicago Lumber Company, as against Owen, amount to an adjudication as to the matters which are in dispute in this action. The judgment of the district court is

AFFIRMED.